IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TERRY BLAIR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 07-0420-CV-W-ODS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION
DENYING BENEFITS

Pending is Plaintiff's pro se request for review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born in 1960 and has completed the eleventh grade. She has prior work experience as a hand packager and cook. Plaintiff filed her applications for benefits under Titles II and XVI of the Social Security Act on June 7, 2005, alleging a disability onset date of January 12, 2005. She alleges she is disabled due to a broken left hand, degenerative changes in her dorsal spine, and hearing loss. Her claims were denied initially and she appealed the denial to an Administrative Law Judge ("ALJ"). In a decision on December 18, 2006, after a hearing, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act. On May 14, 2007, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

*A. Medical Records*

On January 12, 2005, Plaintiff went to the emergency room at Truman Medical Center ("TMC") complaining of left hand pain.  She reported that she had been out drinking the night before and had slipped on some icy stairs.  Plaintiff fractured the third and fourth metacarpal on her left hand.  She was treated with an ulnar gutter splint.  R. 207-17.  Plaintiff returned for follow-up on January 21, 2005.  She reported that her pain was adequately controlled and denied any numbness, tingling, or weakness.  Plaintiff's splint was removed and she was placed in a short-arm ulnar gutter cast.  She was asked to return again in one week for repeat x-rays.  R. 205.  Plaintiff returned on January 28, 2005.  She had no rotational deformity.  The cast was removed so Plaintiff could wash her hand and forearm and then it was put back on.  She was told to return in four weeks.  R. 204.

On March 4, 2005, Plaintiff returned for follow-up.  Clinic notes of Christopher R. Chuinard, M.D., report that Plaintiff was angry about waiting and demanded that the cast be removed.  X-rays showed excellent callous formation about the fracture site.  However, Plaintiff lacked a tremendous amount of flexion.  Examination of the soft tissue showed no evidence of breakdown on the skin.  Plaintiff had no tenderness to palpitation about the fracture site and non-painful range of motion.  Dr. Chuinard instructed Plaintiff on active and passive range of motion protocol and told her to return in three weeks if she was not able to touch her fingertips to her palm.

On March 25, 2005, Plaintiff saw James Hamilton, M.D., at the Orthopaedic Clinic.  Plaintiff complained of continued swelling and lack of range of motion and that when she made a fist, her small finger and ring finger crossed.  On examination, Plaintiff was nontender to palpitation over her third and fourth metacarpal shafts.  Dr. Hamilton noted that Plaintiff's fingers did cross when she made a fist, however, he noted that her effort was minimal and that she may be "doing this on purpose."  Dr. Hamilton instructed Plaintiff to begin working on range of motion exercises.  R. 199.

On April 29, 2005, Plaintiff returned to the clinic for follow-up.  Dr. Chuinard noted Plaintiff showed significant decrease of flexion of her third, fourth, and fifth fingers.  He also stated that he thought she was making a minimal effort.  Dr. Chuinard

2

recommended continued home therapy. He also prescribed occupational therapy and naproxen. R. 197.

On May 4, 2005, Plaintiff began occupational therapy at TMC. On May 13, Plaintiff's ranges of motion of both the right and left hand were within functional limits. On May 27, Plaintiff reported that she was feeling better. On June 1, 2005, Plaintiff saw Dr. Hamilton for follow-up. Plaintiff reported pain and numbness in her left hand. Dr. Hamilton noted that x-rays showed good healing of her fractures. Plaintiff reported that her medications had upset her stomach so she had discontinued them. Dr. Hamilton believed Plaintiff's pain may be neurogenic in origin. He prescribed Neurontin. R. 181. By June 16, Plaintiff's strength and range of motion were within functional limits. Plaintiff was able to button her shirt, tie a knot or bow, and put soap on a washcloth with little difficulty; she was unable to open a new jar. R. 175.

Plaintiff returned to the clinic on July 9, 2005. Examination revealed Plaintiff was nontender over the third and fourth metacarpals; had no significant swelling, and had continued difficulty making a fist. Brock Wentz, M.D., noted Plaintiff's difficulties appeared to be "exacerbated by minimal effort." X-rays showed a nondisplaced and healed third and fourth metacarpal shaft fracture with good callus formation. Dr. Wentz also believed Plaintiff's pain may be neurologic. R. 226. On July 30, Plaintiff reported tingling and occasional shooting pains in her hand. She reported nausea with the Neurontin and no relief from a recent prescription for amitriptyline. Dr. Hamilton recommended continued hand therapy, stating that surgery would not be helpful. R. 224.

On September 30, 2005, Plaintiff continued to report tingling and shooting pain. Examination revealed no tenderness or swelling over the old fracture sites. Harpreet Basran, M.D., diagnosed likely reflex sympathetic dystrophy ("RSD"). He prescribed Elavil, occupational therapy, and desensitization exercises. R. 220. On October 20, 2005, Plaintiff reported pain relief in response to physical therapy. On October 27, the physical therapist noted Plaintiff no longer crossed her fingers when making a fist. R. 235-36.

On November 29, 2005, Plaintiff reported no help from the Elavil. She also did

3

not believe occupational therapy was beneficial. She did report that overall her symptoms may be a little bit improved. Examination showed no deformity of the palm or dorsum and the fracture sites were nontender. She had limited range of motion with decreased flexion of the long finger, but maintained flexion of the ring finger. She continued to have internal rotation of her little finger with fist clinching. Plaintiff refused to discuss any kind of sympathetic blocks. Dr. Hamilton prescribed Ultram. R. 219.

Plaintiff went to the emergency room at Research Medical Center on April 15, 2006, complaining of left hand, arm, and right thumb pain after being handcuffed and dragged by police. X-rays of the left hand showed an old fracture deformity of the third metacarpal. The fracture appeared to be bridged by hypertrophic bone. No acute fracture was identified. X-rays of the right thumb showed no apparent fracture or dislocation. The attending physician assessed acute left wrist sprain and acute right thumb sprain. R. 276-88.

Plaintiff went to Swope Parkway Health Central on May 15, 2006 and July 7, 2006, with complaints of low back, right thumb, right wrist, left hand, and left ankle pain. X-rays of Plaintiff's thoracic spine showed minimal degenerative changes of the dorsal spine, that her disk interspaces were preserved, and no recent bone trauma. X-rays of her right hand revealed no evidence of fracture, dislocation, or other bone abnormality. R. 291-95.

### B. Hearing Testimony

Plaintiff testified at a hearing in front of the ALJ on July 20, 2006. Plaintiff testified that she lived in Kansas City, Missouri with her daughter and one-year old granddaughter. She stated she is right-hand dominant. Plaintiff had difficulty hearing the questions she was asked throughout the proceeding, but she stated she had not seen anybody about her hearing problems. She testified that she had not worked since her injury on January 12, 2005, when she fell and sustained fractures in her left hand. She testified that she had not been drinking alcohol the night she fell. R. 40. Plaintiff reported that she had injured her back, her right thumb, leg, and reinjured her left hand during an altercation with a security officer in April 2006.

Plaintiff testified that she still has throbbing and numbness in her left hand, extending into her wrist. She stated that she has dropped things when holding them with her left hand. Plaintiff testified that she could lift from five to fifteen pounds with her left hand, and had no trouble reaching. She also said she had difficulty handling small objects with her left hand. She stated that she still has problems making a fist, and that she has not noticed any improvement despite continuing to do exercises at home. Plaintiff also stated that she continues to experience back and foot pain, rating her pain as an eight out of ten. She testified that her left leg gives out about once a week, sometimes causing her to fall. She stated that she could only stand for fifteen minutes and walk for one block. Plaintiff said her right thumb was no longer injured. She testified that she usually takes pain medication twice a day, but not everyday, and that she no longer has side-effects from her medication. Her medications include Tramadol, Hydrocodone, Ibuprofen, Gabapentin, and Cyclobenzaprine.

Plaintiff stated that during the day she watches television and takes care of her grandchild. She says she does very little housework but does shop for groceries with her daughter. Plaintiff testified that she lays down about half the day.

A Vocational Expert ("VE") also testified at the hearing. In the form of a hypothetical question, the ALJ asked the VE to assume a person of Plaintiff's age, education, and work experience that is capable of lifting and carrying no more than twenty pounds occasionally and ten pounds frequently, that is able to sit and stand/walk for six hours of an eight-hour day, that has an unlimited ability to push and pull with all extremities except the left upper extremity, and that has limited ability to push, pull, handle, and finger with the left upper extremity. The VE stated that such a person would not be able to perform Plaintiff's past work as a hand packager and cook, but that such a person could perform work as an information clerk, counter clerk, and order filler. The VE testified that each of these jobs existed in significant numbers in the local and national economies.

*C. The ALJ's Decision*

The ALJ found that Plaintiff had a severe impairment from a left hand injury. He

also found that the record did not support a finding that Plaintiff's back and hearing problems resulted in significant limitations in her functional abilities. He found that Plaintiff's impairment did not meet or equal a listed impairment.

The ALJ found Plaintiff's subjective allegations of the intensity, persistence, and limiting effects of her symptoms to be not entirely credible. He found Plaintiff to have the Residual Functional Capacity ("RFC") to perform a wide range of light work, finding she is able to lift and/or carry twenty pounds occasionally and ten pounds frequently and that she can sit, stand and/or walk for six hours in an eight-hour workday. The ALJ also found that Plaintiff cannot push or pull with the upper left extremity and her ability to finger and or handle with the left hand is limited. The ALJ found that Plaintiff could perform the work described by the VE. Therefore, he found Plaintiff was not disabled.

## II.  DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

*A. The ALJ's Credibility Finding*

The ALJ's finding that Plaintiff's subjective allegations of the severity of her symptoms were not entirely credible is supported by substantial evidence on the record

as a whole. The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that she experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

The ALJ stated many specific reasons to discredit Plaintiff's testimony. For instance, the ALJ found inconsistencies between Plaintiff's allegations of her limitations and her apparent ability to care for her one-year old grandchild on a daily basis. Specifically, the ALJ noted that caring for an infant necessarily would require Plaintiff to

7

lift more than five to fifteen pounds. The ALJ also noted that Plaintiff initially testified regarding only hand pain, but upon later prompting from her attorney she described back pain, rating it an eight on a ten point scale. Plaintiff also testified that she did not take pain medication every day. See Singh v. Apfel, 222 F.3d 448, 453 (8th Cir. 2000) ("A claimant's allegation of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications."). The ALJ also noted that on more than one occasion, Plaintiff reportedly put forth "minimal effort" during her examinations. Review of the medical records also shows Plaintiff making conflicting statements about the efficacy of treatment, including physical therapy.

The ALJ found that the objective medical evidence did not support Plaintiff's allegations. The medical records repeatedly reported Plaintiff to have a normal range of motion in her left hand and proper healing of her fractures. Likewise, Plaintiff's complaints of disabling back pain were not supported by x-rays of Plaintiff's spine, which showed only minimal degenerative changes and no recent bone trauma. Additionally, Plaintiff did not provide any medical evidence to support her alleged hearing problems. Accordingly, the ALJ explained the inconsistencies he relied on in discrediting Plaintiff's subjective complaints.

*B. The ALJ's RFC Formulation*

The Court concludes the ALJ formulated Plaintiff's RFC based on all the relevant evidence, including medical records and opinions, and Plaintiff's credible testimony. The ALJ accounted for Plaintiff's lingering difficulty using her left hand, by finding Plaintiff was limited in her ability to push, pull, and handle with her left hand. The ALJ appropriately concluded that Plaintiff's RFC would not allow her to perform her past work, but that she is capable of performing other jobs found in significant numbers in the state and national economies, such as information clerk, counter clerk, and order filler. Accordingly, the ALJ's finding that Plaintiff has not been "disabled" as defined by the Social Security Act at any time through the date of the decision is supported by substantial evidence on the record as a whole.

8

Case 4:07-cv-00420-ODS   Document 21   Filed 01/06/09   Page 8 of 9

## III. CONCLUSION

The Commissioner's decision denying benefits is affirmed.

IT IS SO ORDERED.

                                                    /s/ Ortrie D. Smith
                                                    ORTRIE D. SMITH, JUDGE
DATE: January 6, 2009                       UNITED STATES DISTRICT COURT

9

Case 4:07-cv-00420-ODS   Document 21   Filed 01/06/09   Page 9 of 9